IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CRUZ SERRANO CASTRO, JR.,**

    **Plaintiff,**

    vs.                                                  Civ. No. 16-397 KK

**NANCY A. BERRYHILL,[1]**
**Acting Commissioner of Social Security,**

    **Defendant.**

## **MEMORANDUM OPINION AND ORDER[2]**

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11) filed July 22, 2016, in support of Plaintiff David Cruz Serrano Castro's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Commissioner") denying Plaintiff's claims for Title II disability benefits. On October 26, 2016, Plaintiff filed his Motion to Reverse and/or Remand Administrative Agency Decision and Memorandum in Support ("Motion"). (Docs. 18, 20.) The Commissioner filed a response in opposition to the Motion on January 12, 2017 (Doc. 25), and Plaintiff filed a Notice of Briefing Complete on January 17, 2017 (Doc. 26). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to order the entry of judgment, in this case. (Docs. 4, 7, 8.)

## I. Background and Procedural History

Claimant Cruz Serrano Castro, Jr. ("Mr. Castro") alleges that he became disabled on March 8, 2014, at thirty-two years of age, because of recurring unrepairable ventral abdominal hernias, upper back condition and pain, right shoulder condition and pain, bilateral hearing loss, post-traumatic stress disorder, and nocturnal sleeping panic attacks. (Tr. 188, 249.[3]) Mr. Castro served fourteen years in the United States Army and worked as a combat engineer. (Tr. 39-43, 274.) Prior to his military service, Mr. Castro worked briefly as a heavy equipment operator. (Tr. 43.)

On April 25, 2014, Mr. Castro filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401.[4] (Tr. 188-89.) Mr. Castro's application was initially denied on December 8, 2014, and denied again at reconsideration on April 30, 2015. (Tr. 80, 81-92, 93, 94-106, 107-110, 115-17.) On May 18, 2015, Mr. Castro requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 129-30.) On September 25, 2015, ALJ Eric Weiss conducted a hearing. (Tr. 34-79.) Mr. Castro appeared in person at the hearing with his attorney Michael Hacker. (*Id.*) The ALJ took testimony from Mr. Castro, (Tr. 39-72), and from an impartial Vocational Expert ("VE"), Sandra Trost. (Tr. 72-78.)

On October 27, 2015, the ALJ issued an unfavorable decision. (Tr. 14-28.) In arriving at his decision, the ALJ determined that Mr. Castro met the insured status requirement through

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record that was lodged with the Court on July 22, 2016. (Doc. 11.)

[4] On April 24, 2014, Mr. Castro filed an application for Supplemental Security Income. (Tr. 174-182.) The ALJ's determination at issue here does not address Mr. Castro's SSI application.

December 31, 2019.[5] (Tr. 19.) He found that Mr. Castro had not engaged in substantial gainful activity since March 8, 2014, the alleged onset date. (*Id.*) The ALJ found that Mr. Castro suffered from severe impairments of post-traumatic stress disorder (PTSD), anxiety, ventral hernia status post-surgical repairs, right shoulder strain, thoracic spine strain, and obstructive sleep apnea with CPAP. (*Id.*) The ALJ further found that Mr. Castro suffered from non-severe impairments of hearing loss, tinnitus, left knee iliotibial band syndrome, alcohol use disorder and seasonal allergies. (Tr. 20.) The ALJ determined that Mr. Castro's severe and non-severe impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20-21.)

Because he found that Mr. Castro's impairments did not meet or equal a listed impairment, the ALJ went on to assess Mr. Castro's residual functional capacity ("RFC"). The ALJ stated that

> [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to lift 20 pounds occasionally and lift and carry 10 pounds frequently and push or pull the same. He is able to walk and stand for 6 hours per 8-hour workday and sit for 6 hours per 8-hour workday with normal breaks. He is able to climb ramps and stairs occasionally, but never ladders, ropes and scaffolds. He is able to occasionally stoop, crouch, kneel and crawl. He is able to frequently handle and finger with his right upper extremity. He must avoid more than occasional exposure to unprotected heights and moving machinery. He is able to understand, remember and carry out detailed, but not complex instructions and make commensurate work related decisions. He is able to adjust to routine changes in work setting. He is able to interact occasionally with supervisors, coworkers, and the public. He is able to maintain concentration, persistence and pace for 2 hours at a time during the workday, with normal breaks.

(Tr. 21-22.) Based on the VE's testimony, the ALJ concluded that Mr. Castro was unable to perform any past relevant work, but that considering Mr. Castro's age, education, work

---

[5] To receive disability benefits, a claimant must show he was disabled prior to his date of last insured. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

3

experience, and RFC, there were jobs that existed in significant numbers in the national economy that Mr. Castro could perform, and he was therefore not disabled. (Tr. 26-28.)

On March 4, 2016, the Appeals Council issued its decision denying Mr. Castro's request for review and upholding the ALJ's final decision. (Tr. 1-3.) On May 6, 2016, Mr. Castro timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## II. Standard of Review

The Court will not disturb the Commissioner's denial of disability benefits if the final decision[6] is supported by substantial evidence and the Commissioner applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). In conducting its review, the Court meticulously examines the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). Substantial evidence is "more than a scintilla but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Thus, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court

---

[6] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision. 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and the Court will therefore review the ALJ's decision as the Commissioner's final decision.

would have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

The Commissioner's decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's decision should discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.*; *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

### III. Applicable Law and Sequential Evaluation Process

A claimant is disabled under the Social Security Act if that individual has a severe medically determinable physical or mental impairment or impairments which can be expected to result in death or have lasted or can be expected to last for a continuous period of twelve months and that render the claimant unable to engage in any substantial gainful work in the national economy. 42 U.S.C. § 423(d)(1)(A) & (2)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993). In considering an application for disability insurance benefits, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The claimant bears the burden of proof at the first four steps and must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of

the Listings[7] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If the claimant can show that his impairment meets or equals a listed impairment at step three, the claimant is presumed disabled. However, if at step three the claimant's impairment does not meet or equal a listed impairment, before moving on to step four of the analysis, the ALJ must consider all of the relevant medical and other evidence, including all of the claimant's medically determinable impairments whether "severe" or not, and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1)-(3). This is the claimant's residual functional capacity ("RFC") which the ALJ uses to determine whether the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1545(a)(1) & (a)(3); 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e). If the claimant establishes that he cannot perform his past relevant work, the burden of proof then shifts to the Commissioner at step five of the sequential evaluation process, to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Id.*; *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v.*

---

[7] 20 C.F.R. pt. 404, subpt. P. app. 1.

*Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

## IV. Analysis

Mr. Castro asserts three arguments in support of his Motion: (1) the ALJ's RFC assessment is contrary to the evidence and constitutes clear and reversible legal error; (2) the ALJ failed to conduct a pain analysis; and (3) the ALJ's credibility determination is contrary to law and constitutes clear and reversible legal error. (Doc. 20 at 2, 4-23.) Because the Court finds grounds for remand as discussed below, the Court does not analyze all of Mr. Castro's arguments.

### A. RFC

As to his first argument, Mr. Castro specifically contends that the ALJ failed to consider, *inter alia*, symptoms related to his PTSD in assessing his RFC.[8] (Doc. 20 at 5-10.) He further argues that Dr. Susan Flynn's failure to include a mental functional assessment as part of her consultative exam should have prompted the ALJ to order another mental consultative exam.[9] (*Id.* at 10.) The Commissioner contends that ALJ's RFC accounted for all of Mr. Castro's credible limitations, including his PTSD symptoms. (Doc. 25 at 7-8.) The Commissioner asserts

---

[8] Mr. Castro also asserts that the ALJ ignored the pain associated with his cervical and thoracic spine, right shoulder, and abdomen. (Doc. 20 at 5.) He further asserts that the ALJ ignored the postural effects of his left knee iliotibial band syndrome and hernia, and ignored his right leg numbness and medication side effects. (*Id.*)

[9] On December 1, 2014, State agency examining psychological consultant Susan M. Flynn, Ph.D., evaluated Mr. Castro. (Tr. 1112-114.) Dr. Flynn did not prepare a mental functional assessment, but did assign Mr. Castro with a GAF score of 50, indicating serious impairment in social and/or occupational functioning. (Tr. 1114.) *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. The ALJ accorded Dr. Flynn's GAF assessment little weight because she noted good activities in Mr. Castro's daily living. (Tr. 25.)

7

that Mr. Castro's mental status examinations were typically normal and that none of Mr. Castro's treating physicians opined that he had mental limitations in excess of the ALJ's RFC assessment. (*Id*.) The Court disagrees.

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); see also 20 C.F.R. §§ 404.1546(c) and 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding). In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3) and 416.945(a)(2) and (3). The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not

supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

It is undisputed that Mr. Castro meets the criteria for PTSD. (Tr. 313-16, 452-61, 1128-1138, 1297-1301.) The basis of his PTSD relates to an incident that occurred on February 16, 2009, when Mr. Castro was at a bar in Anthony, Texas, soon to be deployed to Afghanistan. (Tr. 317-18, 1128.) He was attacked by several men whom he later realized were associated with a drug cartel he had dealt with as part of his military work on a counter-narcotics task force. (*Id.*) In the attack, Mr. Castro suffered several stab wounds, and injured one of his assailants. (*Id.*) Mr. Castro believes that he remains at risk of being attacked and/or killed by the cartel. (Tr. 314, 1128-29.) Based on this incident, Mr. Castro experiences paranoia, anxiety, irritability, recurrent nightmares, and hypervigilance. (Tr. 313-16, 451-61, 1128-1138, 1297-1301.) Mr. Castro states that he avoids certain people, places and crowds because of this incident. (*Id.*)

The medical evidence record supports that for several years following the incident Mr. Castro reported that his PTSD was controlled and caused only mild emotional pain and distress. (Tr. 436-37, 452-53, 684-86, 854-55, 935-36, 961-62.) As a result, military healthcare providers assessed that Mr. Castro's PTSD symptoms did not interfere with his social and occupational functioning, and the Veterans Administration ("VA") ultimately assigned a 10% disability rating based on Mr. Castro's PTSD. (Tr. 355, 461, 1137.) In evaluating Mr. Castro's disability claim, State agency nonexamininng psychological consultants similarly assessed that Mr. Castro's mental impairments only mildly impacted his ability to do work-related mental activities.[10] (Tr. 88-90, 102.)

---

[10] On December 8, 2014, State agency nonexamining psychological consultant Cathy Simutis, Ph.D., reviewed Mr. Castro's medical records and prepared a Psychiatric Review Technique and Mental Residual Functional

9

Beginning in February 2015, however, Mr. Castro reported that his PTSD symptoms had worsened and he was having increased nightmares, anxiety and supervigilance. (Tr. 286.) Mr. Castro testified that his separation from the military exacerbated his PTSD because it left him without the protection of his fellow soldiers and the military environment.[11] (Tr. 58-59.) He testified that since leaving the service he felt like he was in his "own war zone" and didn't have anyone to watch his back. (Tr. 59.) On February 25, 2015, Mr. Castro underwent a mental health assessment through the VA. (Tr. 1128-1138.) He described that his alcohol consumption had increased due to pain and anxiety, that he was having nightmares every other night, that he was hypervigilant, short-tempered, easily frustrated, and checked on his guns repeatedly. (Tr. 1128-1129.) Mr. Castro also reported that he enjoyed his children, enjoyed coaching his daughter in football, and enjoyed his horses even though he could no longer ride them. (Tr. 1129.) VA Psychologist Karen Cusack diagnosed PTSD, assessed that Mr. Castro's symptoms remained mild, and referred Mr. Castro for military trauma treatment. (Tr. 1137.) On June 10, 2015, VA Psychologist Jennifer K. Rielage evaluated Mr. Castro. (Tr. 1296-1301.) Mr. Castro reported that he needed to work on his PTSD, but that he was worried his alcohol cravings would get worse with treatment. (Tr. 1296.) Dr. Rielage noted that Mr. Castro had chronic psychiatric symptoms, without remission, that he was unable to achieve full sobriety, and that ongoing stressors/trauma would make treating his PTSD more problematic. (*Id.*) She assessed a PCL-5

---

Capacity Assessment. (Tr. 85-86, 88-90.) Dr. Simutis determined that Mr. Castro's mental impairments did not meet a listing at step two. (Tr. 85-86.) She further assessed that Mr. Castro was moderately limited in his ability to understand, remember and carry out detailed instructions, and moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. 88-90.) On March 31, 2015, Scott R. Walker, M.D., affirmed Dr. Simutis' MRFC assessment. (Tr. 102.)

[11] Mr. Castro separated from service in October 2014. (Tr. 1158.)

of 74.[12] (Tr. 1298.) Dr. Rielage indicated that Mr. Castro agreed to be referred for substance use disorder treatment, agreed to meet with her for check-ins, and agreed to do military trauma psychoeducational group therapy while waiting for prolonged exposure therapy.[13] (Tr. 1297.) On June 10, 2015, Mr. Castro attended a psychoeducational group orientation. (Tr. 1301.) On June 11, 2015, Mr. Castro began psychoeducational group therapy monitored by Dr. Rielage. (Tr. 1292-93.) Mr. Castro attended seven weekly psychoeducational group therapy sessions from June 11, 2015, through August 6, 2015. (Tr. 1270-71, 1277-78, 1278-79, 1287-88, 1289-90, 1290-92, 1292-93.) On August 17, 2015, Mr. Castro started group therapy for substance use disorder. (Tr. 1269-70.)

On September 23, 2015, Dr. Rielage again met individually with Mr. Castro for the purpose of initiating prolonged exposure therapy. (Tr. 1304-05.) She noted that Mr. Castro's symptoms of depression and PTSD were currently quite high and had "increased recently secondary to increased stressors at home and triggers related to his trauma." (Tr. 1304.) Mr. Castro reported that he was struggling to "move forward with his life and remain vigilant about his surroundings and his family's safety while not slipping in to being overly paranoid, isolated, and distrustful of everyone." (*Id*.) Dr. Rielage noted that Mr. Castro wanted to discuss with his family whether to move forward with prolonged exposure therapy because it would likely exacerbate his PTSD symptoms before it helped to reduce them. (*Id*.) Dr. Rielage assessed Mr. Castro with a PHQ-9[14] of 20, which indicated severe depression, and a PCL-5 of

---

[12] The PCL-5 is a 20-item self-report measure that assesses the 20 *DSM-5* symptoms of PTSD. https://www.ptsd.va.gov/professional/assessment/adult-sr/ptsd-checklist.asp.

[13] Prolonged exposure therapy is a psychotherapy for PTSD. https://www.ptsd.va.gov/public/treatment/therapy-med/prolonged-exposure-therapy.asp.

[14] The Patient Health Questionnaire (PHQ) is a self-administered diagnostic instrument for common mental disorders, which scores each of the 9 DSM-IV criteria as "0" (not at all) to "3" (nearly every day). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268.

75, "which indicate[d] severe PTSD that [was] *significantly interfering with his ability to function psychosocially*." (Tr. 1305.) (Emphasis added.) Dr. Rielage diagnosed Mr. Castro with chronic and severe (at this time) PTSD, and recurrent and severe major depressive disorder. (*Id*.)

The ALJ failed to consider Dr. Rielage's assessment in determining Mr. Castro's mental RFC. The State agency nonexamining psychological consultants, upon whom the ALJ relied to determine Mr. Castro's mental RFC, did not have Dr. Rielage's assessment when they reviewed the medical evidence record and formed their opinions. The ALJ, however, did. Moreover, Dr. Rielage is a treating source. Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Nonetheless, the ALJ failed to even mention Dr. Rielage's notes or her assessment anywhere in his step four RFC analysis. Further, the ALJ incorrectly stated that *none* of Mr. Castro's treating physicians indicated that he was "limited to a degree that [was] more restrictive than the residual functional capacity [assessed][.]" (*Id.*) This finding is not supported by substantial evidence in light of Dr. Rielage's assessment regarding the chronic and severe nature of Mr. Castro's PTSD and its impact on his psychosocial functioning. The record must demonstrate that the ALJ considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(b) and 416.927(b) (we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive). Although an ALJ is not required to discuss every piece of evidence, he must discuss significantly probative evidence he rejects. *Clifton*, 79 F.3d at 1009. Dr. Rielage's assessment regarding Mr. Castro's PTSD is significantly probative evidence that the ALJ failed to address.

For these reasons, the Court finds the ALJ failed to apply the correct legal standards in considering the medical opinion evidence and the ALJ's RFC is not supported by substantial evidence. This is reversible error. *Jensen*, 436 F.3d at 1165. On remand as to this issue,[15] the ALJ is directed to properly evaluate Dr. Rielage's medical opinion pursuant to 20 C.F.R. § 404.1527, and to obtain additional evidence or clarification as deemed necessary pursuant to 20 C.F.R. § 404.1520b, to adequately determine the impact of Mr. Castro's mental impairments on his ability to do work-related mental activities.

### B. <u>Substantial Justification</u>

The Commissioner bears the burden of proving that its position was substantially justified. *Kemp v. Bowen*, 822 F.3d 966, 967 (10th Cir. 1987). The test for substantial justification is one of reasonableness in law and fact. *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995). The government's position must be "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 US. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988). The government's "position can be justified even though it is not correct." *Hackett*, 475 F.3d at 1172 (quoting *Pierce*, 487 U.S. at 565.) A lack of substantial evidence on the merits does not necessarily mean that the government's position was not substantially justified. *Hadden v. Bowen*, 851 F.2d 1266, 1269 (10th Cir. 1988).

As discussed herein, the ALJ failed to apply the correct legal standards in evaluating the medical opinion evidence and the ALJ's RFC is not supported by substantial evidence. Therefore, the government's position was not substantially justified.

---

[15] The Court did not address Mr. Castro's remaining claims of error.

C.  **Remaining Issues**

The Court will not address Mr. Castro's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Conclusion

For the reasons stated above, Mr. Castro's Motion to Reverse or Remand for Rehearing is **GRANTED.**

*[signature]*

**KIRTAN KHALSA**
**United States Magistrate Judge**
**Presiding by Consent**